UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEVONTE GOENS,

       Plaintiff,                        CIVIL ACTION NO. 17-cv-11286

       v.                           DISTRICT JUDGE MARK A. GOLDSMITH

JOHN HOLCOMB,                MAGISTRATE JUDGE MONA K. MAJZOUB

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Devonte Goens filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 on April 24, 2017, alleging that Defendant Captain John Holcomb violated his First Amendment right to be free from retaliation and his Fourteenth Amendment right to the due process of law.[1] (Docket no. 1.)  This matter comes before the Court on Defendant's Motion for Summary Judgment (docket no. 10), to which Plaintiff has filed a response (docket no. 11).  This action has been referred to the undersigned for all pretrial purposes.  (Docket no. 7.)  The Court has reviewed the pleadings, dispenses with oral argument on the motion pursuant to Eastern District of Michigan Local Rule 7.1(f) and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] Plaintiff filed his Complaint against "Unknown Holcomb, in his individual and official capacity as a Lieutenant for Michigan Department of Corrections."  (Docket no. 1 at 1.)  "Unknown Holcomb" has since been identified and has appeared in this matter as Captain John Holcomb (who was a lieutenant during the period relevant to this lawsuit). (Docket no. 9; docket no. 10 at 6 n.1.)

## I.      RECOMMENDATION

For the reasons that follow, it is recommended that Defendant Holcomb's Motion for Summary Judgment (docket no. 10) be **GRANTED IN PART** and **DENIED IN PART** and that this matter be dismissed in in its entirety.

## II.     REPORT

### A.      Factual Background

#### 1.      *Plaintiff's Complaint*

Plaintiff is currently incarcerated at the Lakeland Correctional Facility in Coldwater, Michigan; however, the events giving rise to the Complaint allegedly occurred while he was incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan.  (Docket no. 1 ¶ 1.) In the Complaint, Plaintiff generally contends that Defendant targeted him and retaliated against him for complaining about and reporting Defendant's conduct to Defendant's superiors by instructing other correctional officers to shake Plaintiff down and by filing false misconduct charges against Plaintiff.  (*Id*.)  While not explicitly stated, Plaintiff apparently lodged his complaints against Defendant at some point close in time to November 29, 2016, as Plaintiff was allegedly shaken down on November 29 and every day thereafter, sometimes multiple times per day, through December 4, 2016.  (*Id*. ¶¶ 10-17.)  According to Plaintiff, each time he asked the officers why they were shaking him down, they replied that they were doing so at the instruction of Defendant.  (*Id*.)

Plaintiff alleges that he spoke with Defendant on December 2, 2016, in an attempt to resolve the issue, and Defendant told Plaintiff that if he wanted the harassment to stop, he should stop complaining to Defendant's superiors, and if Plaintiff didn't stop complaining, Defendant guaranteed that Plaintiff would have numerous false misconduct tickets written against him.

(Docket no. 1 ¶ 15.)  Plaintiff filed a grievance against Defendant that same day.  (*Id.* ¶ 16.)
Plaintiff alleges that he spoke with Defendant again on December 5, 2016, and begged
Defendant to stop retaliating against him.  (*Id.* ¶ 18.)  Defendant allegedly told Plaintiff that he
would have his officers stop retaliating when Plaintiff stopped complaining about him and
snitching on him.  (*Id.*)  Plaintiff told Defendant that he would file another grievance against
him, and Defendant responded that the grievance coordinator would never process a grievance
against him because they were friends.  (*Id.*)  Plaintiff then filed another grievance against
Defendant.  (*Id.* ¶ 19.)  On December 8, 2016, Plaintiff sent a kite to the grievance coordinator
asking where the receipts and unique identifying numbers for his December 2 and December 5
grievances were.  (*Id.* ¶ 20.)  And on December 10, 2016, Plaintiff filed a grievance against the
grievance coordinator for not processing his grievances.  (*Id.* ¶ 21.)  Defendant then wrote two
misconduct reports against Plaintiff for destruction or misuse of property, possession of money,
and gambling on December 19, 2016.  (*Id.* ¶¶ 24-25.)   The misconduct charges were
subsequently dismissed.[2]  (*Id.* ¶¶ 26.)

Plaintiff claims that Defendant violated the First Amendment to the United States
Constitution by filing false misconduct charges against Plaintiff in retaliation for Plaintiff's
complaints to Defendant's superiors and for filing of grievances against Defendant.  (Docket no.
1 ¶ 29.)  He asserts that he is now afraid to file grievances and complaints for fear of being
targeted with false misconduct charges that could result in the increase of his security level.  (*Id.*
¶ 30.)  Plaintiff also claims that Defendant's filing of false misconduct charges against Plaintiff
violated the Due Process Clause of the Fourteenth Amendment.  (*Id.* ¶ 31.)  As relief, Plaintiff
seeks compensatory and punitive damages in the amount of $50,000.  (*Id.* at 9.)

---

[2] The aforementioned grievances, kite and misconduct reports, as well as the hearing reports documenting the
dismissal of the misconduct charges are attached to Plaintiff's Complaint as exhibits.  (Docket no. 1 at 11-26.)

2.      *Defendant's Motion*

Defendant sets forth a counter-statement of facts in his Motion for Summary Judgment, which he supports with a personal affidavit as well as affidavits and other documentation from two other Michigan Department of Corrections (MDOC) employees.  (Docket no. 10 at 6-10.)  In his statement of facts, Defendant asserts that he was on leave from September 16, 2016 through December 11, 2016, during which time he was completely away from the correctional facility and had no contact with prisoners or prison staff.  (*Id.* at 7; docket no. 10-2 ¶¶ 3-4; docket no. 10-3 at 2, 4, 6-7.)  Upon his return to work on December 12, 2016, Defendant worked on light duty in the Inspector's office until January 29, 2017, during which time he still had no contact with prisoners.  (*Id.*; docket no. 10-2 ¶¶ 3, 5; docket no. 10-3 at 2, 7-8.)  Defendant returned to full duty on January 29, 2017.  (*Id.*; docket no. 10-3 at 8.)

Defendant's responsibilities while on light duty included reviewing prisoners' telephone calls.  (Docket no. 10 at 7; docket no. 10-2 ¶ 5.)  While reviewing Plaintiff's phone calls, Defendant learned that Plaintiff had placed multiple calls to a phone number during which he discussed point spreads for professional basketball and football games; he deduced that Plaintiff used another prisoner's Prisoner Identification Number (PIN) to place a call to that number; and he learned that Plaintiff received a large sum of money into his prison account from individuals who were not on his approved visitor tracking list.  (*Id.* at 7-8; docket no. 10-2 ¶¶ 7-8.)  These facts and his training and experience led Defendant Holcomb to believe that Plaintiff was engaged in activities consistent with a gambling ring, and Defendant therefore, assertedly in good faith, wrote the aforementioned misconduct reports against Plaintiff on December 19, 2016.  (*Id.* at 8; docket no. 10-2 ¶ 9.)

**B.     Governing Law**

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket no. 10.)  Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000).  Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915.  A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most

favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

### C.    Analysis

Defendant asserts that the court should enter summary judgment in his favor because (1) Plaintiff has failed to exhaust his administrative remedies; (2) Plaintiff has failed to demonstrate that Defendant was personally involved in any unconstitutional conduct; and (3) Plaintiff's claims asserted against Defendant in his official capacity are barred by the Eleventh Amendment. (Docket no. 10.)

### 1.    *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act (PLRA) of 1995 requires that a prisoner exhaust all administrative remedies before filing a section 1983 action.  Specifically, the statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules.  *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 regarding prisoner grievances[3] requires a prisoner to file a Step I grievance within five days of attempting to resolve the grievable issue with prison staff.  MDOC Policy Directive 03.02.130(V).  If the prisoner is dissatisfied with the Step I response, he may file an appeal, referred to as a Step II grievance, "within ten business days after receiving the Step I response or, if no response was received, within ten business days after the date the response was due."  MDOC Policy Directive

---

[3] Defendant attached a copy of MDOC Policy Directive 03.02.130 to his Motion.  (Docket no. 10-5.)

03.02.130(BB).  A similar procedure applies to the Step III grievance process in that if a prisoner is dissatisfied with the Step II response, the prisoner "must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form . . . , to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due."  MDOC Policy Directive 03.02.130(FF).  A prisoner's administrative remedies are exhausted once his complaints have been grieved through all three steps of the grievance process in compliance with the policy. MDOC Policy Directive 03.02.130(B).

Defendant asserts that Plaintiff has not pursued any grievances arising out of the allegations in his Complaint through Step III of the grievance process.  (Docket no. 10 at 15-17.) In support of this assertion, Defendant submitted Plaintiff's Step III Grievance Report as an exhibit to the instant Motion, which reveals that Plaintiff has not filed any Step III grievances since 2014.  (Docket no. 10-6 at 3.)  Defendant also submitted the affidavit of Stacey Ream, the grievance coordinator at the Gus Harrison Correctional Facility, who attests that she never received the grievances purportedly filed by Plaintiff on December 2, 5, and 10, 2016 or the kite that he allegedly sent on December 8, 2016.  (Docket no. 10-4 ¶¶ 4-5.)

Conversely, Plaintiff contends in his Complaint, in his Response to Defendant's Motion, and in an affidavit attached to his Response that he did indeed file the grievances and send the kite at issue, and he claims that Ms. Ream refused to process those grievances because she was friends with Defendant.  (Docket no. 1 ¶¶ 16, 18-21; docket no. 11 at 3, 10.)  Plaintiff contends that Ms. Ream's actions impeded his efforts to comply with the PLRA's exhaustion requirements.  (Docket no. 11 at 3 (quoting *Ross v. Blake*, 136 S.Ct. 1850, 1860 (2016) (administrative remedies are unavailable for purposes of the PLRA exhaustion requirement

"when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."))

Here, the grievances allegedly filed by Plaintiff bear no outward signs that they were received at Step I. (*See* docket no. 1 at 12, 14, 18.) Specifically, there are no grievance identifiers recorded on the forms and no dates recorded in the section designated "Date Received at Step I." But this fact could support either Ms. Ream's assertion that she never received the grievances or Plaintiff's assertion that he was prevented from exhausting his administrative remedies because Ms. Ream refused to process the grievances. Plaintiff and Ms. Ream's competing positions in this regard demonstrate that questions of fact exist as to whether Plaintiff properly exhausted his administrative remedies.

Defendant argues further that even if Plaintiff made a good-faith attempt to file his grievances, Plaintiff still failed to exhaust his administrative remedies because he did not attempt to resolve the alleged retaliatory harassment and shake downs with Defendant prior to filing the grievances, in accordance with MDOC policy. (Docket no. 10 at 16 (citing MDOC Policy Directive 03.02.130(P) ("Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue.")))

Plaintiff alleges in the Complaint that he spoke with Defendant on December 2, 2016 and December 5, 2016, prior to filing his grievances. (Docket no. 1 ¶¶ 15, 18.) Defendant, however, has produced undisputed evidence that demonstrates that he was on leave from September 16, 2016 through December 11, 2016, and that he had no contact with prisoners during that time or until he returned to full duty on January 29, 2016. (*See* docket nos. 10-2, 10-3.) In Response to Defendant's Motion, and in his affidavit attached thereto, Plaintiff seemingly concedes that he

did not speak with Defendant on December 2, 2016.  (Docket no. 11 at 5, 10-11.)  Specifically, Plaintiff claims in this regard that prior to the alleged harassment and shake downs, he had no reason to know who Defendant was or what he looked like.  Therefore, Plaintiff claims, on December 2, 2016, during dinner chow lines, he asked an unknown corrections officer if the ranking officer present was Lieutenant Holcomb, and the unknown officer responded in the affirmative.  He claims that he then spoke with that ranking officer regarding the harassment and shake downs that he had been experiencing, and the officer never denied or denounced being Lieutenant Holcomb.  Essentially, Plaintiff claims to have spoken with a corrections officer whom he believed to be Defendant Holcomb on December 2, 2016 in attempt to resolve his grievable issue regarding the retaliatory harassment and shake downs.  Drawing all justifiable inferences in favor of Plaintiff, it appears that Plaintiff at least *attempted* to resolve his issues before filing the grievances, in accordance with MDOC Policy.  Accordingly, Defendant's Motion for Summary Judgment on the basis that Plaintiff failed to exhaust his administrative remedies should be denied.

### 2.    The Merits of Plaintiff's Claims

To prevail on a § 1983 claim, a plaintiff must prove "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citations omitted).  There is no dispute that Defendant is a person who was acting under color of state law.  Thus, the only remaining issue under a § 1983 analysis is whether he deprived Plaintiff of a constitutional right.

### a.    Retaliation

Plaintiff claims that Defendant retaliated against him for filing complaints and grievances by instructing other corrections officers to shake Plaintiff down and by filing false misconduct

charges against Plaintiff. (Docket no. 1.) Prison officials may not retaliate against inmates who have engaged in constitutionally protected activities or conduct. *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999). A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id.* (citations omitted).

Consideration of Plaintiff's allegations in conjunction with the undisputed evidence submitted by Defendant reveals a fatal flaw in the merits of Plaintiff's retaliation claims. To state a plausible claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that each defendant was personally involved in the alleged constitutional violation. *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). As Defendant argues, Plaintiff has failed to demonstrate that Defendant was personally involved in any unconstitutional conduct. (*See* docket no. 10 at 17-19.) Plaintiff alleges that on or about November 29, 2016, Defendant instructed other officers to shake Plaintiff down after he complained about Defendant to Defendant's superiors. Plaintiff also alleges that he spoke with Defendant on December 2, 2016 and December 5, 2016 regarding the shake downs that he was experiencing, and on December 2, Defendant allegedly responded, "If you want the harassment to stop Mr. Goens, stop complaining to my superiors, but if you don't stop your complaints, I will guarantee that you are written numerous false misconducts;" on December 5, Defendant allegedly responded "I'll have my officers stop retaliating against you when you stop complaining and snitching on me to my captain about what my officers are doing." But in the face of Defendant's undisputed evidence that he was not working at the correctional facility and had no contact with prisoners or prison staff during the period of the

alleged complaints, harassment, and shake downs, Plaintiff seemingly conceded that the person with whom he spoke on December 2, 2016 may not have been Defendant.  Indeed, because the evidence shows that Defendant was not working at the facility on December 2 or December 5, he could not have been the corrections officer that Plaintiff spoke with regarding the shake downs, and he therefore could not have been the officer who told Plaintiff that he would instruct his officers to stop harassing Plaintiff when Plaintiff stopped complaining about him to his superiors. The evidence demonstrates that Defendant was not the corrections officer who was allegedly retaliating against Plaintiff and threatening him with misconduct charges, and Plaintiff has not come forward with significant probative evidence that demonstrates otherwise.

To the extent that Plaintiff could advance an argument that Defendant learned of the grievances that Plaintiff filed against him once he returned to work on December 12, 2016, and that those grievances were the motivating factor for Defendant's filing of the misconduct charges against Plaintiff, such an argument would be unavailing.  "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. . . . If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment."  *Thaddeus*, 175 F.3d at 399 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977)).  Here, Defendant has attested to the fact that upon his return to work on December 12, 2016, he worked on light duty in the Inspector's office, during which time he was responsible for reviewing prisoners' telephone calls for things like drug activity, money transactions, and anything that would compromise the security of the facility.  (Docket no. 10-2 ¶¶ 3, 5-6.)  Defendant attested that while he was reviewing Plaintiff's phone calls, he learned that Plaintiff had placed multiple calls to a phone number during which he discussed

point spreads for professional basketball and football games; he deduced that Plaintiff used another prisoner's PIN to place a call to that number; and he learned that Plaintiff received a large sum of money into his prison account from individuals who were not on his approved visitor tracking list.  (*Id.* ¶¶ 7-8.)  Defendant affirms that in light of his training and experience, these facts led him to believe that Plaintiff was engaged in activities consistent with a gambling ring, and he therefore wrote the aforementioned misconduct reports against Plaintiff in good faith.  (*Id.* ¶ 9.)  Defendant's affidavit verifies that he would have filed the misconduct charges against Plaintiff even if he had known about the grievances that Plaintiff filed against him.

Because Plaintiff has failed to demonstrate the requisite personal involvement of Defendant in the retaliatory harassment and shake downs that he experienced, and because Defendant has sufficiently shown that he would have filed the misconduct charges against Plaintiff despite Plaintiff's grievances, Defendant's Motion for Summary Judgment on the merits of Plaintiff's retaliation claims should be granted.

b.    Due Process

Plaintiff alleges that Defendant violated the Fourteenth Amendment's Due Process Clause by "filing falsified misconducts against [P]laintiff without [P]laintiff having violated a valid rule infraction."  (Docket no. 1 ¶ 31.)  The Due Process Clause states in pertinent part that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, § 1.  Those who seek to invoke the procedural protection of the Due Process Clause must establish that a life, liberty, or property interest is at stake.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  An inmate is deprived of a liberty interest under the Due Process Clause when the deprivation extends the duration of his sentence or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Sandin v. Conner*, 515 U.S. 472, 484 (1995).   In this case, the evidence shows that the misconduct charges filed against Plaintiff by Defendant were dismissed following a hearing, and Plaintiff therefore did not receive any sanctions as a result of those charges.   Moreover, Plaintiff does not allege that he was deprived of a liberty or property interest as is necessary to trigger the protection of the due process clause.   Accordingly, Defendant's Motion for Summary Judgment on the merits of Plaintiff's due process claim should be granted. [4]

>        **D.**      **Conclusion**

For the reasons stated herein, it is recommended that the court **GRANT IN PART** and **DENY IN PART** Defendant Holcomb's Motion for Summary Judgment (docket no. 10) and dismiss this matter in its entirety.

## III.    NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).   Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.   *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).   Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

---

[4] In light of the recommendation that Defendant be granted summary judgment on the merits, the Court does not reach Defendant's argument that Plaintiff's claims against him in his official capacity are barred by the Eleventh Amendment.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated:  February 2, 2018            s/ Mona K. Majzoub
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE


## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff Devonte Goens and counsel of record on this date.

Dated:  February 2, 2018            s/ Leanne Hosking
                                    Case Manager